**Andrew FULLMAN, Plaintiff,**

v.

**William J. HENDERSON, et al., Defendants.**

**No. CIV. A. 99–2138.**

United States District Court, E.D. Pennsylvania.

May 15, 2001.

689

**691**

Andrew Fullman, Philadelphia, PA, pro se.

Annetta Foster Givhan, James G. Sheehan, U.S. Atty's Office, Philadelphia, PA, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Presently before the court are the parties cross-motions for summary judgment in this employment discrimination complaint filed by pro se plaintiff Andrew Fullman ("Fullman") against his former employer, the United States Postal Service ("Postal Service") as well as the EEO Office of the Postal Service ("EEO Office").[1] The case centers around the Postal Ser-

1. Fullman names the EEO Office as well as the Postal Service in his complaint. The EEO Office is not a separate entity amenable to suit. Because Fullman is pro se, the court will conclude that all claims against the EEO Office are claims against the Postal Service, instead of dismissing those claims against the EEO Office.

vice's discharge of Fullman following its conclusion that he had filed a false workers' compensation case regarding an alleged injury he suffered during an argument with a fellow worker. As he has done in other litigation, Fullman challenges the Postal Service's determination that he filed a false claim. In this case, Fullman alleges that the Postal Service's delay in sending him a formal termination notice in 1992 as well as its failure to reinstate him in 1997 was not the product of his filing a false workers' compensation claim, as asserted by the Postal Service, but the result of racial, sexual and/or disability discrimination.

Fullman's complaint essentially involves five claims. First, Fullman alleges that the Postal Service racially and sexually discriminated against him in violation of Title VII when it failed to send him an official termination notice in 1992 and when it refused to reinstate him on the grounds that he filed a false workers' compensation claim. Second, Fullman alleges unspecified state claims arising out of the alleged employment discrimination by the Postal Service.[2] Third, Fullman claims that the Postal Service discriminated against him in violation of the Americans with Disabilities Act when it removed him from its workforce at a time when he was disabled. Fourth, Fullman claims that the Postal Service violated his due process rights by its delay in sending him a formal termination notice, a Form 50, which he claims is needed to file an unemployment compensation claim under the Federal Employees Compensation Act ("FECA").

2. Fullman does not specifically describe what these claims are or what facts support such claims. As discussed below, the court finds those claims are barred by Title VII, which provides the exclusive remedy for employment discrimination directed against federal workers.

Fifth, Fullman claims that the EEO Office violated his due process rights by refusing to allow an EEOC Administrative Judge to issue his/her findings and conclusions *without* a hearing with respect to one of his discrimination claims filed with the EEO Office.

The Postal Service responds that Fullman's Title VII claims have been previously dismissed as time-barred in an earlier civil action and, therefore, are res judicata. In addition, the Postal Service argues that Fullman has failed to establish he was discriminated against in violation of the ADA. The Postal Service further notes that Fullman's claims ultimately challenge the Postal Service and United States Department of Labor's ("DOL") determination that Fullman filed a fraudulent workers' compensation claim, and that this determination is not reviewable by this court. Finally, the Postal Service argues that Fullman's due process claims and state law claims are not permitted because the only relief available to a federal employee who alleges employment discrimination is under Title VII.

The court will grant summary judgment in favor of the Postal Service and the EEO Office on all of Fullman's claims. In reaching this conclusion, the court finds (1) that Fullman's Title VII claims are time-barred; (2) that Fullman has failed to establish he was discharged from the Postal Service on account of a disability, as required under the ADA; (3) that Fullman's state law claims are barred because Title VII provides the exclusive remedy for a federal employee alleging discrimination in the workplace; (4) that the Postal Service did not violate Fullman's due process rights because its delay in sending him a formal notice of termination did not prevent him from obtaining unemployment compensation; and (5) that the EEO Of-

fice did not violate Fullman's due process rights because the regulations did not grant Fullman a right for an Administrative Judge to make findings and conclusions without a hearing and because its decision was appealable to this court.

## I. BACKGROUND

Sometime in 1986, Fullman began working at the Postal Service as a temporary casual employee. On February 5, 1989, Fullman was involved in a trolley to trolley accident and sustained injuries to his head, back, and right shoulder for which he was out of work. Fullman returned to work at the Postal Service in March of 1989, but was reduced to light-duty work status based on his injuries.

On March 20, 1989, plaintiff was involved in an argument with a fellow employee, Larry Johnson ("Johnson"). The severity of the altercation is contested by the parties. Fullman asserts that Johnson pushed him into an All–Purpose Container, which aggravated his lower back injuries suffered in the trolley accident.

On March 23, 1989, based on the alleged injuries he sustained in his confrontation with Johnson, Fullman filed a workers' compensation claim with the Postal Service. During the course of its investigation of Fullman's claim, the Postal Service interviewed four witnesses, including Johnson. All the witnesses stated that the confrontation was strictly verbal and that there was no physical contact between the two men. On April 3, 1989, the Postal Service notified the Office of Workers' Compensation of the United States Department of Labor ("DOL") that it was contesting Fullman's workers' compensation claim. On May 25, 1989, the DOL notified Fullman that, based on the lack of medical or eyewitness testimony to support his claim, he was denied workers' compensation. Fullman requested recon-

sideration of the denial. On August 14, 1989, the DOL reaffirmed its decision that Fullman had failed to submit credible evidence demonstrating that he had in fact been injured at work.

On October 6, 1989, the Postal Service sent Fullman a Notice of Removal letter, indicating that he would be removed from employment at the Postal Service based on its conclusion that he had filed a false workers' compensation claim. Following his removal from the Postal Service, Fullman remained on its employee rolls in a non-duty, non-pay status while the American Postal Workers Union ("APWU") appealed the plaintiff's removal through the grievance process. On August 14, 1992, the APWU notified the Postal Service's Labor Relations Office that it was withdrawing plaintiff's grievance. The parties agree that, at this time, Fullman was entitled to a formal termination notice, known as a "Form 50." The Postal Service, however, did not send the notice until March 26, 1996. Although the dates are unclear, Fullman spent much of the time between his removal from the Postal Service in 1989 and his receipt of the Form 50 in 1996 incarcerated on unrelated charges.

In October 1996, August 1997, and October 1997, Fullman sought reinstatement of his Postal Service position. Each time, Fullman was informed that he would not be reinstated because he had been removed for cause based on the Postal Service's conclusion that he had filed a false workers' compensation claim.

Since 1990, Fullman has filed four separate administrative complaints arising from his discharge from the Postal Service. In February 1990, Fullman filed a formal complaint of discrimination, Agency Case No. 2A–000–1072–90, ("First Complaint") claiming race discrimination based on his removal from the Postal Service.

The EEO Office dismissed this complaint as untimely.

In December 1996, Fullman filed a formal complaint of discrimination, Agency Case No. 1C–191–1121–96 ("Second Complaint"), alleging race and sex discrimination because he did not receive the Postal Service Form 50, Notice of Personnel Action, formally terminating his employment with the Postal Service, until March 1996. The EEO Office dismissed this complaint on the grounds that Fullman was actually raising his removal claim again. In January 2000, the Equal Employment Opportunity Commission's (the "EEOC") Office of Federal Operations affirmed the agency's dismissal.

On October 19, 1998, Fullman filed a formal complaint of discrimination, Agency Case No. 4C–190–0035–98 ("Third Complaint"), alleging race and physical disability discrimination when the Postal Service denied his October 1997 requests for reinstatement. On April 16, 1999, Fullman was advised that he had the following rights:

You may request a hearing before an Administrative Judge of the Equal Employment Opportunity Commission (EEOC). To request a hearing, you must notify in writing the Senior EEO Complaints Processing Specialist, . . ., within 30 calendar days of your receipt of the investigative file. After the hearing, the Administrative Judge will submit his/her findings and conclusions to the Postal Service for the issuance of its final agency decision. EEOC regulation § 29 C.F.R. § 1614.109(e)(3) also permit the Administrative Judge to issue findings and conclusions without a hearing or make such other ruling as is appropriate.

Alternatively, you may request a final agency decision without a hearing. To request such a decision, you must notify

in writing the Senior EEO Complaints Processing Specialist, ..., within 30 calendar days of your receipt of the case file.

If you fail to request either a hearing or a final agency decision without a hearing within 30 calendar days of you [sic] receipt of the case file, the agency will issue its final agency decision.

If you are dissatisfied with the Postal Service's final decision, you may file a civil action an appropriate U.S. District Court, within 90 calendar days of your receipt of the decision.

On April 26, 1999, the EEO Office received Fullman's reply in which he stated that "I would like to take advantage of this right and allow the Administrative Judge to issue his/her findings and conclusion without a hearing." On October 19, 1999, the EEO Office issued a final decision dismissing Fullman's complaint. In a footnote to the decision, the EEO Office stated:

[C]omplainant requested a decision without a hearing. At that time, this instant matter was not before the Commission (which is the AJ for these purposes), therefore, the agency interprets complainant's request as a request for a decision on the record by the agency. As stated, there is no provision for the AJ to make any ruling, since complainant did not elect for this matter to be presented before the Commission/AJ.

On April 16, 1999, Fullman filed a formal complaint of discrimination, Agency Case No. 1C–191–0044–99 ("Fourth Complaint"), alleging discrimination when he was denied reinstatement on November 21, 1998. On July 29, 1999, the EEO Office dismissed this claim because Fullman had raised the same reinstatement issue in Agency Case No. 4C–190–0035–98, filed on October 21, 1998. Fullman never sought review of the dismissal with this court.

In addition to his four administrative complaints, Fullman has filed three lawsuits, two of which are before this court, based on the same claims of discrimination that he litigated in the administrative complaints. On December 19, 1994, Fullman filed a complaint in the Eastern District of Pennsylvania alleging racial discrimination against the Postal Service ("First Civil Complaint"). On April 21, 1997, Judge Thomas N. O'Neill, Jr. dismissed the case on the grounds that it was not filed within the two-year statute of limitations and it was not subject to equitable tolling. Fullman filed a motion for reconsideration. On July 28, 1997, Judge O'Neill denied the motion for reconsideration, reasserting that the plaintiff's claim was not filed within the statute of limitations and was not subject to equitable tolling.

On March 10, 2000, Fullman commenced civil action 00–1318, assigned to this court, seeking *de novo* review of his racial and sexual discrimination complaint ("Second Civil Complaint"), alleging that the Postal Service's failure to send Fullman a Form 50 was the result of discrimination. On April 27, 1999, Fullman filed with this court Civil Action Number 99–2138, requesting review of his race, sex, and disability discrimination claims ("Third Civil Complaint"), alleging discrimination on the part of the Postal Service for its failure to reinstate him at the Postal Service. On May 12, 2000, the court consolidated civil action numbers 99–2138 and 00–1318 and granted Fullman leave to file an amended complaint in 99–2138. On August 24, 1999, plaintiff filed an amended complaint raising a due process violation by the EEO Office.

On September 5, 2000, Fullman filed a motion for summary judgment and declaratory judgment. On October 16, 2000, the Postal Service responded with its own motion for summary judgement. Finally, and

hopefully for the last time, the court will deny all of Fullman's multifaceted claims that his removal from the Postal Service in 1989 was based on unlawful discrimination and that he is entitled to relief. For the reasons that follow, the Postal Service is entitled to summary judgment.

## II. ANALYSIS

### A. *Legal Standard for Summary Judgment*

Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party. *Id.* at 251, 106 S.Ct. 2505. In making this determination, a court must draw all reasonable inferences in favor of the non-movant. *See Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party. *Radich v. Goode,* 886 F.2d 1391, 1395 (3d Cir.1989).

### B. *Alleged Violations of Title VII*

Fullman's alleges that he was racially and sexually discriminated against in violation of Title VII when the Postal Service delayed sending him a Form 50 notice and when the Postal Service refused to reinstate him upon his request in the Fall of 1997. By focusing on the delay in sending a Form 50 notice as well as the Postal Service's letters refusing reinstatement, Fullman attempts to revive his earlier claim filed with Judge O'Neill that his receipt of the notice of removal from the Postal Service was discriminatory because it wrongly concluded that Fullman filed a fraudulent workers' compensation claim. For the reasons enumerated in Judge O'Neill's Orders dated April 21, 1997 and July 18, 1997, Fullman's Title VII claims fail as a matter of law because they are time-barred.

Judge O'Neill dismissed Fullman's complaint because he found that the two-year limitations period began to run on Fullman's claims when he received the notice of removal on October 18, 1989. Because Fullman filed his complaint on November 15, 1994, well after the limitations period had expired, Judge O'Neill found that his claim was time-barred. In addition, Judge O'Neill found that equitable tolling did not apply to Fullman's claims because "plaintiff identifies no actions or communications within the limitations period that could reasonably be construed as suggesting that he had not been removed from his employment on October 18, 1989." Unpublished Order, April 21, 1997, Civ. A. No. 94–6923. Consequently, Fullman did not meet the standards for equitable estoppel. *Id.* (citing *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1391–92 (3d Cir.1994)). Judge O'Neill reaffirmed his position when, in an Order dated July 28, 1997, he denied Fullman's request for equitable tolling based on supplemental documents Fullman presented to the court. Unpublished Order, July 28, 1997, Civ. A. No. 94–6923.

Despite Judge O'Neill's two written orders on the matter, Fullman essentially seeks to reassert his discrimination claims by arguing that the Postal Service's delayed Form 50 notice as well as its letters refusing reinstatement represent new acts of discrimination on the part of the Postal Service for which Fullman may seek Title

VII relief. However, the court finds that the Postal Service's delayed Form 50 notice as well as its letters refusing reinstatement do not revive Fullman's claims because, as Judge O'Neill concluded, his Title VII claims accrued on October 18, 1989 and, therefore, his claims are time-barred.

The Third Circuit has made clear that the statute of limitations accrues when "the plaintiff has discovered or, by exercising reasonable diligence, should have discovered (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct." *New Castle County v. Halliburton NUS Corp.,* 111 F.3d 1116, 1124 (3d Cir.1997)(citing *Oshiver,* 38 F.3d at 1386). In order to ensure that the prompt filing of discrimination claims, the Third Circuit has further concluded that "a claim accrues upon awareness of actual injury, not upon awareness that the injury constitutes a legal wrong." *Halliburton,* 111 F.3d at 1125.

In this case, the "actual injury" occurred when Fullman was sent the notice of removal on October 18, 1989, not when he received the Form 50 notice or the Postal Service letters refusing reinstatement. First, there is no doubt that Fullman understood that he had suffered an injury at the hands of the Postal Service when he received the notice of removal on October 18, 1989. Not only did Judge O'Neill determine that this was the point in time when the claim accrued, but also the plaintiff himself proceeded to file a series of administrative claims challenging his removal.

■ Furthermore, Fullman may not seek relief under Title VII for the Postal Service's failure to reinstate him because Fullman was never entitled to reinstatement under Postal Service regulations. Under Chapter 3, section 313.53 of the

Personnel Operations Handbook of the Postal Service, it states:

It is UPSP policy to refuse employment to persons who were removed from the Postal Service or from other federal employment for cause....

The Postal Service handbook makes only one exception to this general rule:

In exceptional cases where appointment of such an individual is contemplated, approval of the Field Director, Human Resources, or Manager, Employment and Development must be obtained before employing any such former postal or federal employee.

Harvey White, who held the position of Field Director, Human Resources at the time Fullman requested reinstatement, indicated that during his seven year tenure at that position, he never granted this exception.

Clearly, Fullman had no right to reinstatement because he was removed for cause and because, White, in refusing Fullman's request for reinstatement, was simply making a discretionary decision. Although a public employee may have a protected property interest in his job, that interest does not prevent discharge for cause. *See Arnett v. Kennedy,* 416 U.S. 134, 160–161, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (permitting discharge of federal employee for cause under the Lloyd–LaFollette Act); *Board of Regents v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (finding state employee's property interest in public job did not extend so far as to prevent a discharge for cause). Because Fullman was discharged for cause and was, therefore, not entitled to reinstatement under the Postal Service regulations, Fullman cannot claim he suffered actual injury as a result of the Postal Service's discretionary decision not to reinstate him.[3]

---

3. Similarly, for reasons stated below, Fullman

cannot claim he suffered actual injury based

Fullman also seeks to avoid the conclusion that his Title VII claims are time-barred by arguing that he did not assert a sexual discrimination claim against the Postal Service in earlier litigation. Although it does not appear that a sexual discrimination claim was before Judge O'Neill, this claim is still barred by the statute of limitations because, as with the racial discrimination claim, the accrual date for his claim occurred on October 18, 1989, and Fullman did not file his sexual discrimination claim until well after the statute of limitations ran out.

■ Furthermore, the document that Fullman relies upon to assert his sexual discrimination claim demonstrates that equitable tolling does not apply. Fullman cites a Postal Service Employee Union newsletter released sometime in late Summer or early Fall of 1992 that describes an African–American female who was reinstated during the grievance procedure for allegedly filing a false workers' compensation claim. Because this document was not released within the two-year statute of limitations, it cannot be relied upon for equitable tolling.

■ Finally, Fullman cannot claim that he was unaware that he was sexually discriminated against until he saw the newsletter. A plaintiff's knowledge of the discrimination is not necessary for the statute of limitations to begin to run in Title VII claims. *Harper v. Court of Common Pleas of Philadelphia*, No. CIV. A. 99–4906, 2000 WL 688169 *2 (E.D.Pa. May 26, 2000) ("Plaintiff did not have to discover that her injury was based on discrimination, but need only be 'aware of the existence of and source of the injury.'"). On October 18, 1989, Fullman met this test and he, therefore, is time-barred from asserting a claim for sexual discrimination.[4]

■ To the degree that Fullman's discrimination complaint challenges his removal on the grounds that the Postal Service and the DOL wrongfully determined that he was not in fact entitled to workers' compensation, the federal courts have found that those determinations are not subject to review in federal courts. Both the Supreme Court and several United

---

on the Postal Service's delay in sending him a Form 50 notice.

4. Even assuming that Fullman's sexual discrimination claim is not time-barred, the fact that an African–American female co-worker ("Ms. Doe") had her discharge reversed does not establish that Fullman was discriminated against based on sex. In order for Fullman to make out a prima facie case for disparate treatment, he must demonstrate that similarly situated non-protected persons were treated more favorably than himself. *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987). In this case, Fullman must show that similarly situated non-protected persons were reinstated. "To be deemed 'similarly situated,' the individuals with whom a plaintiff seeks to be compared must 'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Dill v. Runyon*, CIV.

A. No. 96–3584, 1997 WL 164275 *4 (E.D.Pa. April 3, 1997) (citing *Anderson v. Haverford College*, 868 F.Supp. 741, 745 (E.D.Pa.1994)). "Furthermore, the proposed analogues must be similarly situated in all 'material respects.'" *Id.* (quoting *Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996)); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir.1994).

In this case, Fullman's removal and Ms. Doe's removal are not 'similarly situated.' Whereas the Postal Service Employees Union withdrew the grievance in the case of Fullman, the union pressed for and won arbitration for Ms. Doe. Whereas the arbitrator ordered that the Postal Service reinstate Ms. Doe with back pay, noting that the United States Department of Labor ("DOL") had recognized Ms. Doe's injury as compensable, the DOL disallowed Fullman's claims for workers' compensation benefits.

States Courts of Appeals have found that section 8128(b) of FECA,[5] dealing with the finality of decisions rendered by the DOL with respect to FECA benefits, is the type of language Congress employs when it "intends to bar judicial review altogether." *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 779–780 & n. 13, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985); *Meester v. Runyon*, 149 F.3d 855, 857 (8th Cir. 1998); *Hanauer v. Reich*, 82 F.3d 1304, 1307 (4th Cir.1996); *Czerkies v. U.S. Dept. of Labor*, 73 F.3d 1435, 1442 (7th Cir.1996). Consequently, this court cannot address Fullman's essential claim underlying all his discrimination claims that his removal from the Postal Service was based on a wrongful determination that he was not entitled to workers' compensation.[6]

### C. Alleged Violation of the ADA

Although Fullman argues that his removal from the Postal Service was based,

in part, on his alleged total disability following the March 20, 1989 incident with Johnson, Fullman has failed to raise a genuine issue of material fact that he is entitled to the protections of the ADA. *Tice v. Centre Area Transportation Authority*, 247 F.3d 506, 511 (3d Cir.2001).

 "To state a claim for employment discrimination under the ADA, a plaintiff must demonstrate that he or she is a 'qualified individual with a disability' within the meaning of the Act, and that he or she has suffered an adverse employment decision as a result of the discrimination." *Id.* (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir.1999)). *See also Wagner v. Fair Acres Geriatric Center*, 49 F.3d 1002, 1003 (3d Cir.1995); *Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1380 (3d Cir.1991). Even assuming that Fullman can fulfill the first prong for establishing an ADA claim,[7]

---

5. The relevant language of section 8128(b) reads:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.
> 5 U.S.C. § 8128(b).

6. It should be noted that Fullman's evidence supporting his claim that the Postal Service and the Department of Labor improperly determined that he was not injured on March 20, 1989 does not refute the evidence supporting that decision. The Postal Service had four witnesses, including Johnson himself, that stated that there was no physical contact between Fullman and Johnson.

Fullman seeks to refute that evidence, in part, by citing medical records indicating that he had in fact suffered an injury on or around March 20, 1989. Those records, however, do not establish that Fullman's injuries, if any, were "sustained while in the performance of

[his job]," as required under FECA. *See Heilman v. United States*, 731 F.2d 1104, 1110 (3d Cir.1984); *Joyce v. United States*, 474 F.2d 215, 218 (3d Cir.1973); FECA, 5 U.S.C. § 8102. In fact, the letter he cites from the West Philadelphia Medical Center states that "we cannot, in any way, judge whether or not the exacerbation of Mr. Fullman's injuries were [sic] as a result of a happening at work, or elsewhere."

Fullman also relies on a finding by Pennsylvania's Unemployment Compensation Board of Review ("UCBR") that "[t]he claimant did not file a fraudulent Workmen's Compensation Claim." However, the fact that a *state* agency in determining whether Fullman was entitled to *unemployment compensation* reached a contrary result regarding the fraudulent nature of his workers' compensation claim than the United States Department of Labor ("DOL"), which is authorized to review federal *workers' compensation* claims, does not rendered the DOL decision invalid. The DOL reached its own conclusion on the evidence presented to it and, under the law, that decision is final.

7. The court notes that Fullman, in his motion for summary judgment, has provided a dis-

he has failed to provide any evidence that he has "suffered an adverse employment decision *as a result* of ... discrimination." *Tice,* 247 F.3d 506, 514 (emphasis added). Although the ADA prevents an employer from discharging an employee based on his disability, it does not prevent an employer from discharging an employee for misconduct, even if that misconduct is related to his disability. *See, e.g., Brown v. Lucky Stores, Inc.,* 246 F.3d 1182 (9th Cir.2001) (concluding ADA does not prevent an employer from discharging an employee suffering from alcoholism when that employee drives under the influence of alcohol); *Pernice v. City of Chicago,* 237 F.3d 783, 785 (7th Cir.2001) (finding ADA does not prevent employer from dismissing drug-addicted employee who is arrested for possession of drugs); *Jones v. American Postal Workers Union,* 192 F.3d 417, 429 (4th Cir.1999) (noting ADA is not violated when Postal Service discharges employee for on-the-job threats, even if those threats were the result of a disability). In this case, Fullman was discharged based on the Postal Service's conclusion, supported by eyewitness testimony, that Fullman filed a false workers' compensation claim. Fullman has presented no evidence in his motion for summary judgment raising a genuine issue of material fact that his discharge was the result of any alleged disability.

### D. *Fullman's State Claims Barred by Title VII*

■■■■■ Although Fullman in his complaint filed in 00–1318 alleges that the Postal Service violated state law in discharging him and not reinstating him, he has never explained what state laws the Postal Service allegedly violated. This court notes, however, that Title VII provides the exclusive remedy for job-related discrimination in federal employment. *See Brown v. General Serv. Admin.,* 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Gissen v. Tackman,* 537 F.2d 784, 786 (3d Cir.1976). Therefore, to the degree that Fullman seeks relief through state law for the alleged discriminatory conduct by the Postal Service, the court dismisses those claims as barred by Title VII. *See Disante v. Henderson,* No. CIV. A. 98–5703, 2000 WL 250225 *10 n. 12 (dismissing Postal Service employee's state claims, in part, because Title VII provides exclusive remedy for federal workers' claims of employment discrimination).

### E. *Postal Service's Alleged Violation of Fullman's Due Process Rights*

■■■■ The court finds that Fullman's due process claim against the Postal Service is frivolous. Fullman mistakenly argues that he was unable to file a claim for unemployment compensation because he needed a Form 50 to file such a claim. However, the regulations enacted under FECA do not require a former federal employee to have a Form 50 in order to file for unemployment compensation.

In seeking unemployment compensation, a former federal employee must file a claim with the appropriate state agency. 20 C.F.R. § 609.8. Upon receiving the claim, the state agency must obtain from the federal agency that employed the claimant, "including additional and reconsidered Federal findings." 20 C.F.R. § 609.6(e)(1). In the event that the federal agency fails to provide the state agency

---

ability certificate from Germantown Hospital indicating that he was "totally incapacitated" from March 20, 1989 and April 10, 1989. In his complaint, he also admits that he is no longer "disabled." Because Fullman has provided no evidence that his removal from the

Postal Service was based on anything other than its conclusion that he filed a false workers' compensation claim, the court does not decide whether Fullman has satisfied his burden of showing he is disabled within the meaning of the ADA.

the needed information, the state agency "shall determine the individual's entitlement to UCFE on the basis of an affidavit completed by the individual on a form prescribed by the Department [of Labor]." 20 C.F.R. § 609.6(e)(2). In such a case, "the individual shall submit for examination by the State agency any documents issued by the Federal agency (for example, Standard Form 50 *or* W–2) verifying that the individual performed services for and received wages from such Federal agency." *Id.* (emphasis added).

The regulations, therefore, do not *require* a Form 50 for a former federal employee, such as Fullman, to seek and obtain unemployment compensation. Furthermore, the letter from the Unemployment Compensation Board of Review dated April 17, 1990 to Fullman indicates that he was eligible and would receive unemployment compensation. Clearly, then, the Postal Service's delay in sending the Form 50 did not prevent Fullman from filing and receiving unemployment compensation benefits.[8] Because there was no requirement that Fullman have a Form 50 to obtain unemployment compensation and because there was no harm in failing to send a Form 50, the court grants the Postal Service's motion for summary judgment on Fullman's due process claim against the Postal Service.[9]

### F. *EEO's Alleged Due Process Violations*

■ Similarly, the court finds Fullman's due process claim against the EEO

Office frivolous. Although Fullman alleges that he was *entitled* to have an Administrative Judge render a decision without a hearing, neither the EEO's letter nor the regulations themselves state that a complainant has a *right* to have an Administrative Judge render a ruling without a hearing. As stated in the EEO's letter, Fullman could request either (1) a hearing before an Administrative Judge of the EEOC (who would then submit his or her findings and conclusions to the Postal Service for the issuance of its final agency decision) or (2) a final agency decision without a hearing. Although the letter indicates that the Administrative Judge may render findings and conclusions without a hearing, the regulation at issue, 29 C.F.R. § 1614.109(e)(1),[10] does not make such a discretionary decision on the part of the Administrative Judge a right that the complainant may demand. Instead, the regulation states in pertinent part: "If the administrative judge determines upon his or her own initiative that some or all facts are not in genuine dispute, he or she *may,* . . ., issue an order limiting the scope of the hearing or issue findings and conclusions without holding a hearing." *Id.* (emphasis added).

■ Furthermore, the EEO Office's denial of Fullman's claim did not violate his due process rights because it was not a final, unappealable decision. *See Adams v. EEOC,* 932 F.Supp. 660, 665 (E.D.Pa.1996)

---

8. Although it is incomprehensible that it would take the Postal Service four years to send the Form 50, the lapsed time is irrelevant for the reasons stated in this section of the memorandum.

9. Although not clear in his complaints, to the degree that Fullman suggests in his motion for summary judgment that the Postal Service's delay in sending him a Form 50 violated his due process rights because it delayed

his ability to assert his discrimination claims against the Postal Service, the court's earlier conclusion that those claims are time-barred renders such arguments meritless.

10. The Code of Federal Regulations has been revised since the parties began the litigation and the particular regulation in question appears at 29 C.F.R. § 1614(g)(3).

 

(noting that "[g]overnment agencies may violate the due process clause when they adjudicate or make binding determinations"). "Because federal employees are entitled to seek *de novo* review of their claims in the district courts, however, an EEOC or [government employer's] determination of an employment discrimination claim is neither an adjudication nor a binding determination." *Id.* (citing *Mitchell v. EEOC*, 888 F.Supp. 710, 713 (E.D.Pa. 1995)). As the EEO Office's letter correctly indicated, Fullman was permitted under Title VII to pursue a *de novo* determination of his claim; therefore, the EEO Office's determination was not a binding decision that violated the due process rights of Fullman.

## III. CONCLUSION

For all the above-mentioned reasons, the court grants the Postal Service's motion for summary judgment and denies Fullman's motion for summary judgment.[11] With respect to Fullman's discrimination claims, the court finds that Fullman's Title VII are time-barred and his ADA claim does not establish that he was discharged based on his alleged disability. The court also finds that any state claims asserted against the Postal Service are barred by Title VII, which provides the exclusive remedy for employment discrimination against federal workers. With respect to Fullman's due process claims, the court finds that the claim against the Postal Service fails because the Postal Service's delay in sending the Form 50 did not prevent Fullman from filing for and receiving unemployment compensation. The court also finds that the claim against the EEO Office fails because Fullman was not *entitled* to have an Administrative Judge render findings and conclusions without a

hearing and because the EEO Office decision was appealable to this court.

An appropriate order follows.

## ORDER

**AND NOW**, this 15th day of May, 2001, based on the memorandum dated May 15, 2001, it is hereby **ORDERED** that plaintiff's motion for summary judgment (doc. no 29) is **DENIED** and defendants' motion for summary judgment (doc. no. 42) is **GRANTED**. Judgement is entered in favor of defendants and against plaintiff. It is **FURTHER ORDERED** that the Clerk of the Court shall mark this case as **CLOSED**.

**AND IT IS SO ORDERED.**

---

11. Although Fullman is entitled to appeal the decision of this court, he is cautioned that any effort to reconfigure his claims and commence further litigation in this court may subject him to sanctions.