**Victoria SAIDU–KAMARA, Plaintiff,**

**v.**

**PARKWAY CORPORATION, Lawrence Sesay, Paul Deangelo and Emmanuel Oluwole, Defendants.**

**No. CIV. A. 00–CV–2572.**

United States District Court,
E.D. Pennsylvania.

Aug. 13, 2001.

Scott M. Pollins, Lower Gwynedd, PA, for Plaintiff.

Kristine Grady Derewicz, Barbara Rittinger Rigo, Littler Mendelson, P.C., Philadelphia, PA, for Defendants.

## *MEMORANDUM*

JOYNER, District Judge.

This is an employment discrimination case brought by Plaintiff Victoria Saidu–Kamara ("Plaintiff") against her former employer Parkway Corporation ("Parkway") and Parkway employees Lawrence Sesay ("Sesay") and Emmanuel Oluwole ("Oluwole") (collectively "Defendants"). In her Complaint, Plaintiff alleges that Defendants discriminated against and harassed her on the basis of her sex, thereby

violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"). Presently before the Court is Defendants' Motion for Partial Summary Judgment. For the reasons that follow, we will grant in part and deny in part the Motion.

## BACKGROUND

Taken in the light most favorable to Plaintiff, the relevant facts are as follows. Parkway operates several parking facilities in Philadelphia. In August 1994, Plaintiff was hired by Parkway to work part-time as a cashier at a Parkway facility. After working for several months, Plaintiff eventually became a full-time cashier, working different shifts at various Parkway locations throughout center city Philadelphia. During this time, Sesay was the facility manager in charge of operations at all of the Parkway locations where Plaintiff worked, and Oluwole was the Assistant Manager at three of those locations.

While working at Parkway, Plaintiff received several disciplinary notices for violations of company policy. First, in June 1995, she received a written disciplinary notice from her supervisor, Moses Harris, for a fight she had with another Parkway cashier. On February 2, 1996, Plaintiff received a second disciplinary notice, this time from Sesay for sleeping while on duty. Sesay gave Plaintiff another disciplinary notice on February 26, 1996 for again sleeping on the job. The February 26 notice also indicated that because of the violation Plaintiff was dismissed from her employment with Parkway.

Although Plaintiff concedes that she received the disciplinary notices described, she alleges that throughout her employment she was subjected to various forms of discrimination and harassment by Sesay and Oluwole. According to Plaintiff, Oluwole asked her out on dates on several occasions, directed sexual innuendo toward her, and, at least one time, touched her breasts and buttocks. Plaintiff repeatedly reported these incidents to Sesay, but no action was ever taken.

Plaintiff dual-filed a claim of sexual harassment and discrimination with the Pennsylvania Human Relations Commission ("PHRC") on March 2, 1996. The PHRC subsequently found probable cause for the sex discrimination claim and no probable cause for her sexual harassment claim. Following a June 23, 1999 public hearing, the PHRC issued an opinion and final order on Plaintiff's sexual discrimination claim on January 27, 2000. On May 19, 2000, Plaintiff filed the instant action in this Court.

## DISCUSSION

### I. *Legal Standard*

When deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgement as a matter of law." *Medical Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999) (internal citation omitted). In making this determination, courts should view the facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For its part, the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its showing, the non-moving party "must do more

than simply show that there is some metaphysical doubt as to the material facts," *id.* at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla of evidence in its favor" to withstand summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party fails to create "sufficient disagreement to require submission [of the evidence] to a jury," the moving party is entitled to judgment as a matter of law. *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. 2505.

## II. *Hostile Work Environment*

■ First, Parkway argues that Plaintiff has not presented sufficient evidence to support her hostile work environment claims (Counts II, V, VII, and XI). To state a hostile work environment claim, a plaintiff must show that (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of her sex in her position; and (5) respondeat superior liability exists. *See, e.g., Kunin v. Sears Roebuck & Co.,* 175 F.3d 289, 293 (3d Cir.1999) (quoting *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990)). Parkway claims that Plaintiff has not fulfilled the second element of the prima facie case, that is, she has not established discrimination that was sufficiently pervasive and regular. We agree.

■ For purposes of a hostile work environment claim, the discrimination complained of must be pervasive and severe enough "to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In determining whether a plaintiff has made

the requisite showing, a court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or a mere offensive utterance, and whether it reasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). It follows that the purview of Title VII does not extend to all workplace difficulties, even where the conduct at issue may be crass and unwarranted. Likewise, allegations of isolated or single incidents of harassment do not constitute a cognizable hostile work environment claim. *See, e.g., Rush v. Scott Specialty Gases, Inc.,* 113 F.3d 476, 482 (3d Cir.1997) (citations omitted). Instead, liability for such claims will only attach in situations where the conduct at issue is so severe and pervasive to create an objectively hostile or abusive work environment. *Harris,* 510 U.S. at 21, 114 S.Ct. 367.

■ In this case, Plaintiff's hostile work environment claim primarily consists of four incidents that occurred over an eighteen month period. Plaintiff first claims that in late 1994 or early 1995, Oluwole touched her breast, told her she looked "fresh," and propositioned her to join him later that evening. (Pl.'s Dep. at 26; Answer to Interrog. 10(c)). In the second incident several months later, Oluwole made several suggestive comments regarding Plaintiff's eyes and offered his financial assistance if Plaintiff would go out with him. (Pl.'s Dep. at 45–49). On a third occasion in spring 1995, Oluwole removed from his pants a large bottle of wine, offered Plaintiff a drink, and then asked her to join him later at a local hotel where they could have a "good time." (*Id.* at 41–44). The fourth incident occurred in December 1995 when Oluwole, after complimenting Plaintiff on her good work, patted

her on the buttocks and breast. (*Id.* at 52–56). Beyond these specific events, Plaintiff claims that Oluwole also made annoying or harassing comments about Plaintiff's refusal to take help from him, her family background, and her poverty. (*Id.* at 26, 41, 45, 46, 49).

While Oluwole's purported behavior is loathsome and inappropriate, Plaintiff has at best demonstrated sporadic and isolated incidents of harassment. The four specific incidents she cites occurred over nearly a year and a half. *See, e.g., Bonora v. UGI Utilities*, No. CIV.A. 99–5539, 2000 WL 1539077, at *3–*4 (E.D.Pa. Oct.18, 2000) (supervisor's ten incidents of harassing conduct over two years not frequent enough to create hostile work environment); *Cooper–Nicholas v. City of Chester*, No. CIV.A. 95–6493, at *3, 1997 WL 799443 (E.D.Pa. Dec.30, 1997) (supervisor's comments over nineteen months not frequent enough to create hostile work environment). Moreover, none of the events, with the possible exception of the unwelcomed touching, were sufficiently severe to rise to the level to make out a hostile work environment claim. *See, e.g., Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463–65 (6th Cir.2000) (supervisor's rubbing employee's shoulders, grabbing employee's buttocks, and offensive touching not severe enough to create hostile work environment); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361–62 (7th Cir.1998) (supervisor's four incidents of unwelcome contact with subordinate's arm, fingers, and buttocks, along with repeated sexual jokes aimed at subordinate, not severe enough to create hostile work environment); *McGraw v. Wyeth–Ayerst Labs. Inc.*, No. CIV.A. 96–5780, 1997 WL 799437, at *6 (E.D.Pa. Dec.30, 1997) (supervisor's repeated requests for date, kissing subordinate without her consent, and touching her face not severe enough to create hostile work environment). Although Plaintiff also claims that other derogatory comments were made throughout her employment, her deposition testimony and answers to interrogatories are nearly silent on these matters, vaguely referring only to "comments" without any further detail as to their substance or when or how often they occurred. Such comments, including the few repeated requests for dates, may have been annoying and undoubtedly unwelcome, but they cannot be characterized as patently offensive or severe. *See, e.g., id.*

Considering the totality of the circumstances, we find that Plaintiff has failed to demonstrate sufficiently severe or pervasive discrimination. As a result, we conclude that she has not satisfied a necessary element of her hostile work environment claim, and we will grant Defendants' Motion in this regard.

### III.  *Sex Discrimination*

■ Next, Defendants argue that Plaintiff cannot support her sex discrimination claims (Counts I, IV, and X) because she has failed show she was treated less favorably than similarly situated male employees. To state a prima facie case for sex discrimination, a plaintiff must establish that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) similarly situated non-protected members were treated more favorably. *See, e.g., Anderson v. Haverford College*, 868 F.Supp. 741, 745 (E.D.Pa. 1994). Here, Defendants appear to concede that Plaintiff has met her burden with respect to the first three elements, but argue that she has not fulfilled the fourth element because she has failed to raise any similarly situated men who were treated more favorably than her.

In her Complaint and briefs, Plaintiff points to two male Parkway employees, Mohamed Gba–Kamara and George Boateng, as potential comparators. Defendants focus much of their attention on Gba–Kamara, arguing that he cannot be considered similarly situated because he was a union employee whereas Plaintiff was a non-union employee. (Def.'s Mot. at 13–15). Neither of the parties, nor the Court, has uncovered any case law in the Third Circuit that addresses this precise issue, although Defendants cite two cases from the Eleventh Circuit that support their argument. *See Marshall v. Western Grain Co., Inc.*, 838 F.2d 1165 (11th Cir. 1988); *McKie v. Miller Brewing Co.*, CIV. No. 90–46–ALB, 1992 WL 150160, at *4 (M.D.Ga. Mar.6, 1992). For purposes of the present motion, however, we need not reach this question because we find that Boateng is a valid comparator. As Plaintiff points out, Boateng was a male Parkway cashier who received several more disciplinary notices, including two for sleeping on duty, than Plaintiff did before being fired. The potential different treatment of Boateng and Plaintiff fulfills the fourth element of the Plaintiff's prima facie case and creates a sufficient issue of material fact to survive summary judgment.

## IV. *Individual Liability of Oluwole*

Finally, Defendants argue that Plaintiff cannot maintain sex discrimination claim against Oluwole under the PHRA. We agree.

Unlike Title VII, the PHRA provides for individual liability in limited circumstances where employees "aid, abet, incite, compel or coerce the doing of any act declared by the section to be an unlawful discriminatory practice." 43 P.S. 955(e). Here, Defendants argue that Oluwole played no role in the disciplining of Plaintiff or in the decision to terminate her. As a result, Defendants maintain that Plaintiff cannot show that Oluwole aided or abetted Parkway or Sesay in any discriminatory conduct. Plaintiff does not respond to this argument in any way, and it appears to the Court that there is no evidence of record suggesting that Oluwole played any part in the decisions to discipline and/or fire Plaintiff. As a result, Oluwole cannot be held individually liable under the PHRA, and we will grant Defendants' Motion on this claim.

## CONCLUSION

An appropriate Order follows.

## *ORDER*

AND NOW, this 13th day of August, 2001, upon consideration of Defendants' Motion for Partial Summary Judgment (Document No. 16), and Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART as described in the accompanying Memorandum.