**FIRST INVESTORS CORPORATION, First Investors Management Company, Inc., First Investors Consolidated Corporation, First Investors Fund for Income, Inc., and First Investors High Yield Fund, Inc., Plaintiffs,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

**No. 95 Civ. 0681 (KTD).**

United States District Court, S.D. New York.

Feb. 28, 1997.

Kirkpatrick & Lockhart L.L.P., New York City, (Eugene R. Licker, of counsel), for Plaintiffs.

Kirkpatrick & Lockhart L.L.P., Washington, D.C. (Matthew L. Jacobs, Valerie M. Baruch, of counsel), for Plaintiffs.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, (Marshall T. Potashner, of counsel), for Defendant.

*MEMORANDUM & ORDER*

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs (collectively, "First Investors") initiated this litigation seeking insurance coverage from Defendant ("Liberty Mutual") for various securities fraud claims asserted against First Investors regarding its sale of mutual funds and related products. Pending before this Court are three motions—First Investors' partial summary judgment motion on Liberty Mutual's duty to defend; Liberty Mutual's partial summary judgment motion concerning First Investors' demand for attorneys fees and First Investors' fourth cause of action for breach of the duty of good faith and fair dealing; and Liberty Mutual's objections to the Orders of U.S. Magistrate Judge Nina Gershon, dated June 6, 1996, and June 12, 1996. For the following reasons, First Investors' partial summary judgment motion regarding Liberty Mutual's duty to defend is denied, rendering any review of the other two motions moot.

## I.

From July 1, 1987, through July 1, 1993, Liberty Mutual provided First Investors with Comprehensive General Liability ("CGL") and Umbrella Excess Liability ("Umbrella")

policies. The insuring clause in the CGL policies, after inserting a New York modification, states that Liberty mutual must:

> pay those sums that ... [First Investors] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance policy applies.... This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence".... [Liberty Mutual] will have the right and duty to defend any "suit" seeking those damages even if the allegations of the suit are groundless, false or fraudulent.

The CGL policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time" and "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The Umbrella policies, broader in coverage than the CGL policies, provide protection for "bodily injury; property damage; personal injury; or advertising injury liability." "Personal injury" is defined as "injury to the feelings or reputation of a natural person." Further, the Umbrella policies contain a Banks and Financial Institutions Endorsement, which provides in part that:

> This policy does not apply to bodily injury, property damage, personal injury or advertising liability arising out of:
>
> ...
>
> 3. The loss, depreciation in value, or damage to any real or personal property, including, but not limited to, money, securities, negotiable instruments or contracts representing money, held by or in the care, custody or control of the insured.
>
> 4. Errors or omissions committed or alleged to have been committed by or on behalf of the insured in the conduct of the insured's business activities as a Bank or Financial Institution.

Beginning in 1990, First Investors was named as a defendant in suits filed by individual plaintiffs alleging that First Investors negligently, recklessly or otherwise fraudulently sold mutual funds. The instant case was commenced by First Investors due to Liberty Mutual's refusal to defend and indemnify under the insurance policies. First Investors allegedly marketed mutual funds, apparently specializing in junk bond securities, to retirees with fixed incomes and to residents of nursing homes. (Potashner Aff. in Opp'n at 2.) After sustaining economic losses, twelve separate actions were brought against First Investors ("Underlying Actions") seeking recovery for various injuries, for which First Investors has incurred substantial defense costs.

Liberty Mutual agreed to fund the settlement of two of the twelve actions—the *Hanley* and *Barbosa* claims, which are the focus of Liberty Mutual's counterclaims. (*See* Am. Answer and Countercl. ¶¶ 107–43). On February 3, 1994, First Investors and Liberty Mutual entered into an agreement, whereby the parties memorialized that "the settlement of the [two] lawsuits shall not be considered an admission of any nature by Liberty Mutual ... and payment of the [settlement] shall not be admitted into evidence in any proceeding regarding the applicability of insurance coverage." Because Liberty Mutual raises the improper conduct of one of its agents as a reason for entering into the settlement agreement and First Investors apparently drops this issue in its Reply Memorandum of Law, this Court will not consider the *Hanley* and *Barbosa* settlements when analyzing whether Liberty Mutual has a duty to defend.

Furthermore, First Investors asserts that Liberty Mutual's Local Rule 3(g) statement is deficient as a matter of law. For each point, Liberty Mutual responds either "Admitted" or "Denied". Due to the volume and sufficiency of the submissions as a whole and the unfair prejudice that would be inflicted upon Liberty Mutual due to its counsel's deficiencies, the material facts set forth in First Investors' Local Rule 3(g) statement are not deemed admitted.

## II.

Liberty Mutual contends that First Investors failed to comply with the notice provi-

sions of the CGL and Umbrella policies and, thus, Liberty Mutual is relieved of its duty to defend and to indemnify the *Barbosa, Corley, Hanley, Parsons, Quinn, Rayhill, Tarver,* and *Wilson* claims. (Def. Mem. of Law in Opp'n at 49–50.) "The governing principle is that an insured must give notice to his or her insurer within the time limit provided in the insurance policy or within a reasonable time under all the circumstances and that, absent a valid excuse, failure to satisfy the notice requirement vitiates coverage." *Eveready Ins. Co. v. Saunders,* 149 A.D.2d 456, 539 N.Y.S.2d 957, 957 (2d Dep't 1989). First Investors does not proffer a valid excuse for its tardiness in the documents submitted to this Court and the time periods detailed by Liberty Mutual regarding notice far exceed what a reasonable person could determine is "practicable" under Section IV, Paragraph 2 of the insurance policies. *See State of N.Y. v. Blank,* 27 F.3d 783, 795 (2d Cir.1994) (noting that New York courts have held that reasonableness of time for notice may be determined as question of law).

■ Liberty Mutual's submission on this point, however, trips before crossing the finish line. "[A]n insurer who fails to timely disclaim liability or deny coverage 'as soon as is reasonably possible,' when required by Insurance Law § 3420(d), waives its affirmative defense of late notice." *Matter of Allcity Ins. Co. and Jimenez,* 78 N.Y.2d 1054, 576 N.Y.S.2d 87, 88, 581 N.E.2d 1342, 1343 (1991). For example, in the *Wilson* claim, First Investors initially became aware of the claim in November of 1990, Liberty Mutual was provided notice on January 20, 1993, but coverage was not denied until March 24, 1994. As I find the time periods described by both parties unreasonable, Liberty Mutual cannot prevail on this point.

### III.

■ Whether an insurer has a duty to defend in a certain case is a question of law. "[T]he duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased." *Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272

(1984). "[A]n insurer seeking to avoid its duty to defend bears a heavy burden." *Avondale Indus., Inc. v. Travelers Indem. Co.,* 887 F.2d 1200, 1204 (2d Cir.1989), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). Nonetheless, though an insurer's duty to defend is independent of and broader than its duty to indemnify, "it is not absolute." *Keating v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 995 F.2d 154, 156 (9th Cir.1993).

Here, the question of consequence is whether the Complaint alleges "bodily injury" as that term is defined in Liberty Mutual's CGL and Umbrella policies. *Lavanant v. General Accident Ins. Co.,* 79 N.Y.2d 623, 584 N.Y.S.2d 744, 595 N.E.2d 819 (1992), is cited repeatedly by First Investors as controlling in this litigation because of the court's holding that a policy insuring "bodily injury, sickness or disease" allows for recovery for nonphysical harm (e.g., emotional trauma) in the absence of physical manifestations. Though at first glance seemingly analogous, I cannot concur with First Investors' attempt to stretch the *Lavanant* holding to a securities fraud case. Clearly, *Lavanant* cannot be said to extend to all cases involving economic loss. Indeed, some legal writers have seriously questioned the entire reasoning behind the decision's foundation. *See* Kevin M. LaCroix, *Emotional Distress, Mental Anguish and Bodily Injury Coverage,* 4 NO. 4 Coverage 10, *13–14 (July/Aug.1994).

In *Lavanant,* a portion of the ceiling collapsed in an apartment rented by the underlying claimants from the insured, who was the owner and managing agent of a four-story brownstone located in Manhattan. The underlying claimants sought damages from the insured for personal injury and property damage, alleging negligence, intentional infliction of emotional distress, assault, and breach of warranty of habitability. The *Lavanant* court, in determining that the ambiguity of "bodily injury" in that case permitted coverage for purely emotional distress, recognized "that emotional trauma may be as disabling as physical injury, and that whether a person suffers one form of injury or the other may be a fortuity determined solely by

the particular vulnerability of an individual." *Id.* at 747, 595 N.E.2d at 822.

First Investors, however, fails to address the distinction drawn by the New York Court of Appeals between that case and derivative claims, such as loss of services. *See id.* at 746, 595 N.E.2d at 821 ("The insurer's obligation to compensate for bodily injury does not extend to derivative claims for loss of services which occurred as a result of physical injuries suffered by a third person."). Although this is not a loss of services case, Liberty Mutual follows this reasoning to its logical conclusion by stating "the Court of Appeals reasoned that the emotional distress was a direct result of the ceiling collapse, and not merely derivative." (Def. Mem. of Law in Opp'n at 17.) This result makes sense, because under New York law "a cause of action to recover damages for negligent infliction of emotional distress must generally be premised upon conduct which unreasonably endangers' the plaintiff's physical safety." *Glendora v. Gallicano,* 206 A.D.2d 456, 615 N.Y.S.2d 45, 46 (2d Dep't 1994).

The alleged emotional distress of the Underlying Claimants in this case derives from the decline in the value of their mutual fund holdings. Thus, the question of consequence is narrowed further to whether the investment or intangible economic losses suffered by the Underlying Claimants, caused by the fraudulent representations of First Investors, constitutes emotional distress that falls within the "bodily injury" clause of Liberty Mutual's CGL policy.

In answering this question, First Investors asks this Court to follow the decision of the Supreme Judicial Court of Maine in *Vigna v. Allstate Ins. Co.,* 686 A.2d 598 (Me.1996), where the court declined to hold "that emotional and physical distress claims associated with contract or business-related disputes are parasitic claims derivative of underlying economic losses." *Id.* 686 A.2d at 600. The court added that "[i]f the insurance company wishes to exclude coverage for property or bodily injury damages arising from accidents or occurrences which are contract-related, it must clearly express that intent in the language of its insurance product." *Id.* at 601.

In sum, I find the Ninth Circuit's reasoning in *Keating v. National Union Fire Ins., Co.,* 995 F.2d 154 (9th Cir.1993), and its growing progeny, *see, e.g., Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 28, 44 Cal. Rptr.2d 370, 900 P.2d 619 (1995) ("It is simply not within the intent of parties to a CGL contract that the 'bodily injury' provision would require the insurer to defend a third party lawsuit in which uncovered economic loss is the gravamen of the complaint"), more persuasive than the *Vigna* holding. Though First Investors states that Liberty Mutual's "attempts to distract the Court with lengthy discussions and citations of inapposite out-of-state authority can be ignored" (Pl. Reply Mem. at 9) with no further discussion, the last point addressed by the *Keating* court is directly on point. *See Keating,* 995 F.2d at 156–57. The *Keating* court held that emotional distress claims arising from stock fraud claims do not constitute "bodily injury" under a CGL policy.

> Economic loss of the sort alleged by the investors is accordingly not potentially within the coverage of [the insurer's policies].... It would expand coverage of these policies far beyond any reasonable expectation of the parties to sweep within their potential coverage any alleged emotional or physical distress that might result from economic loss that is itself clearly outside the scope of the policy.

*Id.* at 156. First Investors' conduct is also inconsistent with its argument that the stock fraud claims are covered by the CGL policy. Of significance, the "CGL policies' premiums were based on the square footage of First Investors' premises," (Def. Mem. of Law in Opp'n at 9), First Investors "purchased E & O policies and Investment Company Blanket Bonds to cover the special risks associated with the mutual fund business," (*Id.* at 10), and "First Investors retained counsel, controlled the defense, and conducted settlement negotiations for the Underlying Claims, sometimes for years, without even notifying Liberty Mutual of these claims." (*Id.* at 9); *see* § II *supra.*

Purchasers of CGL policies in New York do not reasonably expect that securities fraud claims, even those which allegedly

cause emotional distress, are covered under business liability policies. In *Jaksich v. Thomson McKinnon Secur., Inc.*, 582 F.Supp. 485 (S.D.N.Y.1984), the court held that "damages for emotional distress do not lie in an action alleging brokerage mismanagement of a plaintiff's account in violation of 10b–5 and common law." *Id.* at 503 (citing *Dujack v. Bear, Stearns & Co.*, 481 F.Supp. 172, 173 (S.D.N.Y.1979) (stating in securities fraud action that New York law "does not permit recovery for emotional distress suffered on mere learning of damages or monetary loss due to another's negligence")). Thus, even the low standard requiring defense for claims that are "groundless, false, or fraudulent" is not met here because the claims brought by the Underlying Claimants as a matter of law are not covered by a CGL policy issued in New York.

■ Finally, though coverage under an umbrella policy is broader than a CGL policy, the Banks and Financial Institutions Endorsements preclude coverage for the Underlying Claims under the Umbrella policies. First Investors argue cursorily that this exclusion is ambiguous and was intended to apply to an affiliate of First Investors that is a savings and loan association. I find, however, that the language of the exclusion is clear and the application to these facts equally clear. As First Investors is a financial institution and the Underlying Claims seek damages arising from the diminishment in value of their investments, First Investors is not entitled to indemnification or defense under the Umbrella policies.

## IV.

■ For the foregoing reasons, First Investors' partial summary judgment motion regarding Liberty Mutual's duty to defend is denied, rendering any review of the other two motions moot. Although Liberty Mutual asks this Court to "dismiss plaintiffs' complaint in its entirety" in its motion papers, it has not made a formal cross-motion for summary judgment to dismiss the Complaint. This Court, however, is empowered to search the record and, if warranted, to grant summary judgment in Liberty Mutual's favor. *See Procter & Gamble Indep. Union v. Proc-*

*ter & Gamble Mfg. Co.*, 312 F.2d 181, 190 (2d Cir.1962), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963); *Local 33 v. Mason Tenders*, 291 F.2d 496, 505 (2d Cir. 1961) (stating "it is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have been made had defendant made a cross-motion for summary judgment").

Because the documents before this Court show that First Investors has no case and requiring Liberty Mutual to file the motion would be a mere formality, I grant summary judgment in Liberty Mutual's favor. Accordingly, the Complaint is dismissed, however, the case is not closed due to Liberty Mutual's counterclaims. The parties are directed to contact Paul Lyness, the Courtroom Case Manager, within five (5) days to schedule a pre-trial conference.

SO ORDERED.