Andrew **FULLMAN,** Plaintiff,

v.

John E. **POTTER,** Postmaster General, Defendant.

Civil Action No. 05–1352.

United States District Court, E.D. Pennsylvania.

March 28, 2007.

---

Andrew Fullman, Philadelphia, PA, pro se.

Annetta Foster Givhan, U.S. Attorney's Office, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

■ Plaintiff Andrew Fullman, proceeding pro se,[1] alleges that the United States Postal Service discriminated against him based on his race, color and sex, and engaged in retaliatory discharge in violation of Title VII after it terminated him for failing to disclose, as required by the employment application, that he was previously employed by the Postal Service and terminated for dishonest conduct. The Court is now faced with the parties' cross-motions for summary judgment. As the Defendant has pointed to an absence of genuine issue of material fact with respect to each of Plaintiff's claims and Plaintiff has failed to raise a genuine issue of material fact, and under applicable law, summary judgment in favor of Defendant on all counts is appropriate. Conversely, summary judgment against Plaintiff is also appropriate on all counts.

## I. BACKGROUND

Plaintiff has a long and tumultuous history with the U.S. Postal Service.[2] *See Fullman v. Henderson,* (hereinafter *Fullman I*) 146 F.Supp.2d 688, 692–95 (E.D.Pa.2001) (Robreno, J.) (giving extensive overview of Plaintiff's employment history with the Postal Service as well as his many complaints against it), *aff'd,* 29 Fed.Appx. 100 (3d Cir.2002). As a full account of Mr. Fullman's history with the Postal Service, and indeed with this Court,

---

1. Plaintiff has requested appointment of counsel on several occasions. However, mindful of the guidance of *Montgomery v. Pinchak,* 294 F.3d 492, 498–99 (3d Cir.2002) (applying factors set forth in *Tabron v. Grace,* 6 F.3d 147, 153 (3d Cir.1993) to indigent civil litigants' request for appointment of counsel), the Court will not appoint counsel. The threshold matter to be decided under the *Tabron* analysis is whether the plaintiff's case has some arguable merit in fact or law. *Id.* Once that hurdle is overcome, the Court will then take into account additional factors, namely (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations, and; (6) whether the case will require testimony from expert witnesses. *Tabron,* 6 F.3d at 155–57. In this case, the Court finds that Plaintiff's case has no arguable merit. Therefore, as this threshold hurdle has not been overcome, it is not necessary for the Court to examine the remaining *Tabron* factors.

2. Indeed, Mr. Fullman has a long history with this Court. He has filed 11 complaints in the Eastern District of Pennsylvania from 1991 to present. See *Fullman v. Brooks, et al.,* No. 91–5957 (O'Neill, J.); *Fullman v. Beatty, et al.,* No. 92–6191 (O'Neill, J.); *Fullman v. Phila. Police Dept., et al.,* No. 93–1096 (O'Neill, J.); *Fullman v. U.S. Dept. of Educ., et al.,* No. 94–1527 (Buckwalter, J.); *Fullman v. U.S., et al.,* No. 94–6923 (O'Neill, J.); *Fullman v. Phila. Int'l Airport, et al.,* No. 98–3674 (Robreno, J.); *Fullman v. Henderson ("Fullman I"),* No. 99–2138 (Robreno, J.); *Fullman v. Henderson,* No. 00–1318 (Robreno, J.) (consolidated into *Fullman I); Fullman v. Teamsters Local Union No. 35, et al.,* No. 03–1993 (Buckwalter, J.); *Fullman v. Potter,* No. 05–1352 (Robreno, J.) (present action); and *Fullman v. Pennsylvania Dept. of Corrections,* No. 06–5665 (Robreno, J.).

In each of these cases, Fullman filed a motion to proceed in forma pauperis, and if his action was not dismissed as frivolous, he subsequently moved for the appointment of counsel.

In addition to the 11 cases where Fullman has been plaintiff, he has also filed two habeas corpus petitions in this district. See *Fullman v. Morgan, et al.,* No. 92–6357 (Katz, J.); *Fullman v. Morgan, et al.,* No. 95–3117 (Katz, J.).

was amply set forth in *Fullman I,* the Court will provide only the current developments in the seemingly endless saga between Mr. Fullman and the Postal Service which led to the present action.

In April 2003, Plaintiff applied for a position with the Postal Service. The application specifically inquired if applicants have been previously employed by the Postal Service. Although Plaintiff had been terminated by the Postal Service in 1989 based on its finding that he had filed a false workers' compensation claim, he failed to disclose this fact on his application. On April 18, having yet to discover Plaintiff's past Postal Service employment, the Postal Service tentatively approved Plaintiff for hire, pending a suitability investigation. At that time, Plaintiff signed a Waiver of Suitability form, which stated that Plaintiff would be subjected to immediate termination if the suitability investigation returned results that would disqualify him from employment.

After the Postal Service obtained Plaintiff's official personnel file revealing his past Postal Service employment (and subsequent termination), it inquired as to why he did not disclose the information. Plaintiff responded that he had been told by his brother-in-law, a postal employee, that the Postal Service does not investigate beyond ten years from the date of the application. Finding this excuse inadequate, on May 29, 2003, the Postal Service informed Plaintiff that he was immediately removed from the rolls of the West Chester Post Office for failing to disclose his prior Postal Service employment and removal.

Subsequently, Plaintiff filed a formal complaint of discrimination and retaliation with the Postal Service. EEO Administrative Judge Jose Perez ruled in favor of the Postal Service, stating that Plaintiff did not state a *prima facie* case of discrimination and retaliation and that the Postal Service had produced a legitimate, nondiscriminatory reason for removing Plaintiff.[3] Plaintiff then appealed to the EEOC's Office of Federal Operations. His appeal was denied on December 21, 2004. On April 11, 2005, Plaintiff filed the present claim with this Court.

On July 22, 2005, Defendant filed a motion to dismiss the complaint, or in the alternative, for summary judgment (doc. no. 9). Upon Plaintiff's request, the case was placed in civil suspense from August 2005 until September 2006. Since that time, the parties have filed a flurry of motions.

Currently pending before the Court are the following motions: (1) Defendant's motion to dismiss, or alternatively, motion for summary judgment (doc. no. 9); (2) two "Motions in Opposition"[4] by Plaintiff (doc. nos.26, 33); (3) Plaintiff's Motion for Appointment of Counsel (doc. no. 28); (4) Plaintiff's Motion for Summary Judgment (doc. no. 34); (5) Plaintiff's Amended motion for Summary Judgment (doc. no. 35); (6) Plaintiff's sur-reply to Defendant's response (doc. no. 38)[5]; and (7) Plaintiff's request for a subpoena (doc. no. 45). This Memorandum will resolve all pending motions.

## II. DISCUSSION

In Defendant's motion for summary judgment, it argues that summary judg-

---

3. See *Fullman v. Potter,* EEOC Hearing No. 170–2004–00227X, Agency Case No. 4C–175–0046–03 (May 27, 2004).

4. Fullman incorrectly labels his response briefs as a "motions".

5. Again, Fullman incorrectly labels his sur-reply as a "Response Motion to Defendant's Memorandum of Law in Opposition to Plaintiff's Cross 'Motion for Summary and Declaratory Judgment' and Plaintiff's 'Amended Motion' " (doc. no. 38).

ment in its favor is appropriate for four reasons. One, collateral estoppel and res judicata operate to bar Plaintiff's previously litigated issues and claims. Two, to the extent that Plaintiff asserts new claims of discrimination and retaliation surrounding his 2003 termination, Plaintiff has failed to make a *prima facie* case of discrimination and retaliation as required by Title VII. Three, even assuming Plaintiff has satisfied a *prima facie* case, he is unable to survive Defendant's motion for summary judgment because the Defendant has offered a legitimate reason for its termination of Plaintiff—namely, that he provided false information on his employment application—and Plaintiff has failed to show that this reason was merely a pretext. Four, Plaintiff's constitutional claims are barred because Title VII provides the exclusive remedy for claims of discrimination in federal employment.

Plaintiff essentially argues that (1) he did not file a false workers' compensation claim in 1989 and therefore (2) "there can be no reason except a discriminatory reason for his termination from the Postal Service." Compl. ¶ 18. After carefully reviewing all of the briefs submitted to the Court by the parties, it is clear that summary judgment in favor of Defendant is appropriate on all claims.

### A. Legal Standard for Summary Judgment

The Court will analyze the parties' briefings in this case as cross-motions for summary judgment.[6] When confronted with cross-motions for summary judgment "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright, Arthur R. Miller & Mary Kane, *Federal Practice and Procedure* § 2720 (1998). Thus, with respect to each party, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

The Court will analyze the parties' cross-motions in the order of their filing. Therefore, the Court will first look to Defendant's motion for summary judgment, filed earlier in time, then analyze Plaintiff's motion for summary judgment.

### B. Defendant's Motion for Summary Judgment

#### 1. Plaintiff's complaint is barred by collateral estoppel and res judicata.

■ Defendant argues that it is entitled to summary judgment because Plaintiff "essentially seeks to relitigate against the Postal Service the propriety of his 1989 termination for filing a false worker's compensation claim," and such a claim, previously litigated by Plaintiff in *Fullman I*, is barred by the doctrines of res judicata and claim preclusion. Def's Mot. Sum. Judgmt., doc. no. 9 at 12. Defendant's argument has merit.

■ "A losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Astoria Fed. Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). For this reason, the doctrine of collateral es-

---

**6.** Plaintiff, proceeding pro se, has filed a number of briefs, some of which he has denominated response "motions." Since Plaintiff relies on matters outside of the pleadings, the Court will treat Plaintiffs's filings as motions for summary judgment.

toppel, or issue preclusion, will bar a claimant from relitigating an issue previously adjudicated "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir.2006) (citing *Restatement (Second) of Judgments* § 27 (1982)).

Collateral estoppel applies when (1) the issue decided in the prior adjudication was identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom collateral estoppel is being asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue in question in the prior action. *Id.* (citing *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir.2001)).

Res judicata, or claim preclusion, "is broader in effect and prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties might have, but did not, assert in that action." *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993). Res judicata applies when there is a "final judgment on the merits in a prior suit involving the same parties or their privies, and a subsequent suit based on the same cause of action." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 158 (3d Cir.2001) (citing *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir.1999)). Issues of claim preclusion in the federal courts are governed by federal law. *See Berwind Corp. v. Apfel*, 94 F.Supp.2d 597, 608 (E.D.Pa. 2000) (citing *Burlington No. R.R. Co. v.*

*Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1231 (3d Cir.1995) (applying federal law principles of issue preclusion when examining the issue preclusive effect of a prior federal court action)).

It is clear from Plaintiff's complaint, as well as his many briefings filed in this action, that Plaintiff painstakingly reasserts his contention that he did not file a false workers' compensation claim in 1989 and, therefore, "should have never been fired [from the Postal Service] in 1989." Plf's Second Mot. Sum. Judgmt, doc. no. 34, at 5. This is the identical issue raised by Plaintiff and addressed by this Court in *Fullman I* and, therefore, as Defendant contends, is barred by collateral estoppel.

*Fullman I*, like Fullman's present suit, "center[ed] around the Postal Service's discharge of Fullman following its conclusion that he had filed a false workers' compensation case regarding an alleged injury he suffered during an argument with a fellow worker." *Fullman I*, 146 F.Supp.2d at 691. There, this Court held, *inter alia*, that (1) plaintiff's claims were time-barred because the actual injury occurred in 1989 when Plaintiff was sent the notice of removal, not when the agency failed to reinstate him; (2) Plaintiff was not entitled to reinstatement because of postal policy refusing employment to persons removed from the Postal Service or other federal agencies for cause; and (3) determinations about entitlement to federal workers' compensation benefits are not reviewable by federal courts, and the workers' compensation claim underlies all of Plaintiff's discrimination claims. *Id.* With a full grasp of Plaintiff's obsession with his 1989 Postal Service termination, at the conclusion of *Fullman I*, although ultimately to no avail, the Court had the foresight to warn Fullman to refrain from "any effort to reconfigure his claims and commence further litigation in this court,"

lest he be subject to sanctions. *Id.* at 700 n. 11.

Even a cursory reading of Plaintiff's briefs in the present suit, however, demonstrates that Plaintiff has failed to heed the Court's warning in *Fullman I*, and now attempts to relitigate issues previously addressed by this Court. For example, Plaintiff summarized his current claims as follows: "The basis for plaintiff's Complaint is to prove that he should have never been terminated in 1989, and put in a position to get terminated a second time in 2003 regarding an alleged 1989 false claim." Plf's Second Mot. Sum. Judgmt., doc. no. 34, at 5. In fact, 10 of the 22 paragraphs in Plaintiff's complaint address why Fullman believes the Postal Service wrongly determined that he filed a false workers' compensation claim in 1989. Defendant is correct that these claims and the surrounding issues, having been previously litigated between the parties, and decided by this Court, are barred by collateral estoppel and res judicata.

In response to Defendant's argument, Plaintiff states that the claims should not be barred because he now has "credible and supportive medical evidence" which "show[s] that plaintiff should have never been terminated in 1989 because medical evidence shows he sustained occupational injuries on March 21, 1989." Plf's Mot. for Sum. Judgmt., doc. no. 33, at 1–2. This argument, however, does not raise a genuine issue of material fact in this case.

Although this Court is not convinced the documents Plaintiff purports to be "new evidence" actually prove anything of the sort,[7] as was extensively discussed in *Fullman I*, Plaintiff's essential claim underlying all his discrimination claims that his removal from the Postal Service was based on a wrongful determination that he was not entitled to workers' compensation is not subject to review in federal courts. *See Fullman I*, 146 F.Supp.2d at 697–98; *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 779–80 n. 3, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985); *Meester v. Runyon*, 149 F.3d 855, 857 (8th Cir.1998); *Hanauer v. Reich*, 82 F.3d 1304, 1307 (4th Cir.1996); *Czerkies v. U.S. Dep't of Labor*, 73 F.3d 1435, 1442 (7th Cir.1996). Therefore, despite Fullman's plea that the Court "reverse the Postal Service's decision that Plaintiff filed a false worker's [sic] compensation claim," Plf's Mot. for Sum. Judgmt., doc. no. 33, at 2, the Court is without power to reach such a conclusion.

---

**7.** In fact, much of the "evidence" offered by Plaintiff in support of his case has already been considered and rejected by the Court in *Fullman I*. For example, Plaintiff submits an April 17, 1990 decision of the Pennsylvania Unemployment Compensation Board of Review which addressed his entitlement to unemployment benefits, (Plf's Ex. G), and evidence of Plaintiff's union grievance concerning his removal (Plf's Ex. I).

Moreover, Plaintiff's purported "new" evidence does not in any way "prove" that he was injured on the job in 1989. For example, while Plaintiff contends that his exhibits "F" through "H" "should serve as expert medical reports," they are merely copies of information from websites, setting forth the definitions and descriptions of injuries from which Plaintiff allegedly suffered. In addition, Plaintiff's exhibit "I" is actually a 2006 letter Plaintiff sent to two physicians requesting medical definitions. This "new evidence" does not in any way prove that Fullman was injured while working at the Postal Service in 1989. Nor would it have provided a basis for a different result in *Fullman I*.

In any event, the "new" evidence is untimely, as it was raised more than 5 years after the 2001 decision in *Fullman I*. Plaintiff claims that the reason this evidence has only recently come to light is because the Postal Service intentionally withheld it from Plaintiff. Plaintiff provides no evidence, and none exists on the record, to support such a theory. For example, Plaintiff's exhibits "A" and "B" show only that Plaintiff requested his medical folder in April 2005, not that it was withheld from him previously.

Therefore, Defendant has pointed to an absence of a genuine issue of material fact that the bulk of Plaintiff's arguments in his complaint are identical to those previously litigated by Plaintiff in *Fullman I*, and are therefore barred in the present suit. Plaintiff's responses not only fail to raise a genuine issue of material fact as to the identical nature of his current claims to those litigated in *Fullman I*, they actually solidify Defendant's position on this point. Under applicable law, Defendant is entitled to summary judgment.

### 2. *Plaintiff has failed to establish a prima facie case of discrimination and retaliation under Title VII.*

Defendant argues that, to the extent that Fullman contests his 2003 termination, Plaintiff has failed to establish a *prima facie* showing as required by Title VII, entitling it to summary judgment. Again, Defendant's contention has merit in this case.

■ Under the seminal *McDonnell Douglas* burden shifting analysis applicable to claims of discrimination under Title VII, the plaintiff "bears the initial burden of establishing a *prima facie* case [of discrimination] by a preponderance of the evidence." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir.2003) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position from which he was discharged, and (3) others not in the protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Iadimarco v. Runyon*, 190 F.3d 151, 155 (3d Cir.1999). If Plaintiff is unable to establish a *prima facie* case of discrimination or retaliation, then summary judgment in favor of defendant is appropriate. *Sarullo*, 352 F.3d at 797.

Although Plaintiff alleges Title VII discrimination based on race (African American), color, sex (male) and retaliatory discharge for prior EEO activity,[8] he fails to establish a *prima facie* case of either discrimination or retaliation.

■ Plaintiff meets the first element necessary to establish a *prima facie* case of discrimination because, as an African American male, he is a member of a protected class. However, because Fullman was terminated for cause, he has not met the second element by showing that he was qualified for the position from which he was terminated. *See Sarullo*, 352 F.3d at 797 (defendant was entitled to summary judgment where plaintiff failed to make a *prima facie* case of discrimination, namely that second prong of *McDonnell Douglas* test is not met when employee is terminated for cause). Even assuming that Fullman does meet the first two elements necessary for a *prima facie* case of discrimination, he has failed to show any instance where others not in the protected class were treated more favorably in the same circumstances as Fullman.[9]

**8.** While Plaintiff does not specifically cite Title VII in his complaint, it is clear that his claims of discrimination are grounded in Title VII. Furthermore, in his opposition to Defendant's motion to dismiss, or in the alternative, motion for summary judgment, (doc. no. 26), Fullman states that he does "not limit this complaint to Title VII employment discrimi-

nation claims" but "also alleges several constitutional violations" (doc. no. 26 at 1). The Court will address the alleged Constitutional violations in section II.B.4.

**9.** In fact, the Administrative Judge in the EEOC hearing noted that Fullman "did not satisfy the second and third elements in that

■ As is the case with his race and sex discrimination claim, Fullman's attempts at a *prima facie* case of retaliation are likewise deficient, entitling Defendant to summary judgment. A *prima facie* case of retaliatory discharge under Title VII exists when the plaintiff (1) engaged in a protected activity, (2) was discharged subsequent to or contemporaneously with such activity, and (3) there is a causal link between the protected activity and the discharge. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir.2000).

■ In this case, Fullman has previously engaged in a protected activity, most recently in 2000. However, he has failed to satisfy the second and third prongs necessary to make out a *prima facie* case of retaliation. While the "mere passage of time is not legally conclusive proof against retaliation," the absence of temporal proximity is a factor in determining whether a causal link exists between the protected activity and the discharge. *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 894–95 (3d Cir.1993); *see also Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir.1997) (finding nineteen months between filing of EEOC charges and adverse action was too attenuated to create a genuine issue of fact on summary judgment); *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir.2000) (finding no causal connection when alleged retaliatory action occurred nearly a year after protected activity). "When temporal proximity between the activity and the allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." *Krouse*, 126 F.3d at 504. There is no evidence of retaliatory animus in this case. Without more, the Court is unable to infer that protected activity from three years before would form the basis of Fullman's termination in 2003. The true nail in the proverbial coffin, however, is that the individual that terminated Fullman was neither involved in, nor had any knowledge of, Fullman's prior EEO activity.[10] Sipe Affidavit (Doc. no. 9, Exh. 3, p. 37). Thus, there is no causal link between Fullman's protected activity and his discharge. He has failed to present a *prima facie* case of retaliatory discharge under Title VII. Having shown that Plaintiff failed to make a *prima facie* case of discrimination or retaliation under Title VII, Defendant is entitled to summary judgment with respect to the Title VII claims.

3. *Postal Service had legitimate non-discriminatory purpose for Fullman's termination.*

■ Even assuming, *arguendo*, that Fullman is able to establish a *prima facie* case of discrimination or retaliation, Defendant is nevertheless entitled to summary judgment, as it has produced a legitimate nondiscriminatory reason for terminating Fullman in May 2003, and Plaintiff is unable to offer any evidence that would allow reasonable minds to conclude that the reason is merely a pretext for discrimination.

Once a plaintiff has established a *prima facie* case of discrimination or retaliation, the burden of production shifts to the employer to state a nondiscriminatory reason for the unfavorable employment decision. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *see also Brown v. Boeing Co.*, 468

---

he failed to identify one non-Black or female employee who failed to disclose in their employment application that they had previously worked for the Agency and were terminated for dishonest conduct (submitting a false compensation claim)." Def.'s Mot. to Dismiss/Mot. for Sum. Judgmt., Exh. 6 at p. 5.

**10.** The averments in the affidavits were neither contradicted nor challenged by Fullman.

F.Supp.2d 729, 734 (E.D.Pa.2007) (Robreno, J.) (stating that once plaintiff makes *prima facie* case, burden shifts to defendant to state a legitimate, nondiscriminatory reason for its action and citing *Johnson v. Women's Christian Alliance,* 76 F.Supp.2d 582, 585 (E.D.Pa.1999) (Robreno, J.)). This is a "relatively light burden" on Defendant at this stage. *See Fuentes,* 32 F.3d at 763.

The Postal Service has stated a legitimate nondiscriminatory reason for terminating Fullman. Simply put, Fullman lied on his employment application.[11] He omitted any information about his prior postal employment and termination, despite being directly asked for such information. He certified that "all of the statements made on this application are true, complete, and correct to the best of my knowledge and belief and are in good faith." Plaintiff did all this notwithstanding the application's warning "that '[a] false or dishonest answer to any question in this application may be grounds for not employing you or for dismissing you after you begin work', and may be punishable by fine or imprisonment." Firing an employee for lying on an employment application states a legitimate nondiscriminatory reason for its action. *See Bush v. Potter,* No. 5:04–CV–322, Doc. no. 14, (E.D.N.C. Dec. 29, 2004) (concluding that providing misrepresentations in a Postal Service employment application provides a legitimate reason for refusal to hire or termination of employment).

Once the employer sustains its burden of articulating a legitimate reason for the unfavorable employment decision, the burden shifts to the employee to show that the reasons proffered by the employer are a mere pretext for discrimination. In other words, the ultimate burden of persuasion as to whether or not the employer is guilty of unlawful discrimination falls on the plaintiff. *St. Mary's,* 509 U.S. at 502, 113 S.Ct. 2742.

■ A plaintiff can show pretext sufficient to defeat a defendant's motion for summary judgment by "point[ing] to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Iadimarco v. Runyon,* 190 F.3d 151, 166 (3d Cir.1999) (quoting *Fuentes,* 32 F.3d at 764; *Sarullo,* 352 F.3d at 799–800). A plaintiff may accomplish this at the summary judgment stage by showing that the defendant's "proffered reasons are weak, incoherent, implausible, or so inconsistent that 'a reasonable factfinder could rationally find them unworthy of credence.'" *Sarullo,* 352 F.3d at 800 (quoting *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108–09 (3d Cir.1997)). Alternatively, the Plaintiff can meet this burden "with evidence that 'the employer's articulated reason was not merely wrong, but that it was "so plainly wrong that it could not have been

---

**11.** Note that the Postal Service learned that Fullman had made false statements in his 2003 application *prior to* terminating his employment. As such, this case does not involve the so—called "after acquired" evidence scenario—that is where evidence of the employee's or applicant's misconduct or dishonesty which the employer did not know about at the time it acted adversely to the employee or applicant, but which it discovered at some point prior to, or, more typically, during, subsequent legal proceeding. The employer then tries to capitalize on that evidence to diminish or preclude entirely its liability for otherwise unlawful employment discrimination. Therefore, the teachings of *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), are not presently applicable.

the employer's real reason." ' " *Id.* (quoting *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir.1999), and *Keller*, 130 F.3d at 1109).

Plaintiff has not shown that the Postal Service's reason for terminating him in 2003 was weak, or in any way unworthy of credence. Contrary to Plaintiff's belief that the Postal Service was acting on some vendetta against him,[12] the decision to terminate Plaintiff was grounded in fixed Postal Service policy. Section 514.11 of the Postal Service's Handbook states, in relevant part:

> It is Postal Service policy to refuse employment . . . to persons who were removed, outside the probationary period, from the Postal Service or from other federal employment for cause. . . .

Moreover, even after discovering the false statements in the application, the Postal Service gave Fullman an attempt to explain them. While Fullman did not dispute his failure to disclose certain required information on the application, he provided a myriad of often conflicting excuses for his false statements, which the Postal Service found lacked credibility. For example, one explanation was that Plaintiff "forgot" that he previously worked for the Postal Service or had applied for workers' compensation. The Postal Service found this highly unlikely, given the fact that he has been litigating the circumstances of his 1989 termination with the Postal Service for nearly a decade.[13] Fullman's other purported reasons for providing false statements were similarly unconvincing.[14]

In this case, there is a lack of evidence from which a reasonable factfinder could either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was

---

**12.** Plaintiff claims that "The Postal Service conspired to get plaintiff terminated by any means necessary and was successful in it." Doc. no. 38 at 7.

**13.** Moreover, this excuse is undermined by one of his other excuses, that he did not think he had to disclose the fact that he was formally employed by, and terminated from, the Postal Service because his brother-in-law, a Postal Service employee told him that the Postal Service only investigated work history from 10 years before. This implies that Fullman made a conscious decision to omit the information, because he thought the Postal Service would never discover his previous history with the Postal Service, not that he merely forgot, as he contends. Aside from being directly contradicted by the plain language of the instructions on the application, whether Fullman actually believed that he did not have to disclose employment older than 10 years is suspect given that he chose to disclose a brief employment with the IRS, 17 years earlier.

**14.** As one excuse for the false statements provided on his application, Mr. Fullman contends that if he would have disclosed that he "was fired from the Postal Service for filing a false compensation claim, he would have disclosed false information." (Compl. at 10). In essence, he is arguing that he never filed a false workers' compensation claim in the first instance and therefore, to have said so on the application, would have been, in itself, a false statement. This argument is illogical.

The question presented by the application was "Have you ever been fired from any job for any reason?" (Def. Ex. 2 at 46). Upon answering "Yes," Plaintiff was required to "give details". Plaintiff, therefore, was not forced to pontificate about the propriety of his termination, merely that he was terminated. Not only did Fullman fail to disclose the reason for his termination, but he failed to disclose that he ever even worked for the Postal Service in the first instance, as was specifically asked by Question 8, Section E of the application.

In any event, Fullman's reasons for failing to disclose his previous Postal Service employment on his application have no bearing on the legal issues in this case—whether the Postal Service had a legitimate, nondiscriminatory reason for terminating Fullman, and that the reason was not merely a "pretext for discrimination."

more likely than not a motivating or determinative cause of the employer's action.

Therefore, even assuming that Plaintiff has established a *prima facie* case of discrimination or retaliation under Title VII, Plaintiff fails to survive Defendant's motion for summary judgment because he has not pointed to any evidence, direct or circumstantial, from which a reasonable factfinder could disbelieve the Postal Service's proffered legitimate reason for terminating him. As such, the Postal Service has clearly shown an absence of genuine issue of material fact and is entitled to summary judgment with respect to these claims.

### 4. *Fullman's Constitutional and State Claims are Barred.*

■ Finally, Defendant contends that it is entitled to summary judgment as a matter of law as to Plaintiff's constitutional and state law claims, if any, because Title VII provides the exclusive remedy for Fullman in this case. The Postal Service is correct in its contention. As noted in *Fullman I*, "Title VII provides the exclusive remedy for job-related discrimination in federal employment." *Fullman I*, 146 F.Supp.2d at 699 (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)); *Wilson v. Potter*, 159 Fed.Appx. 415, 417 (3d Cir. 2005) ("Indeed, Title VII provides federal employees with a remedy that precludes actions for constitutional or other statutory claims)" and citing *Owens v. United States*, 822 F.2d 408, 410 (3d Cir.1987) ("Interpretation of Title VII has shown that Title VII provides federal employees a remedy that 'precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation.' "); *Waiters v. Parsons*, 729 F.2d 233, 236 n. 7 (3d Cir.1984); *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir.1997). Accordingly, Plaintiff's claims that the al-

leged discrimination violated the Due Process and Equal Protection Clauses of the Constitution are barred and Defendant is entitled to summary judgment with respect to these claims.

### C. *Fullman's Motion for Summary Judgment*

In his many briefings to the Court, Fullman claims that (1) he did not file a workers' compensation claim in 1989 and therefore, (2) "there can be no reason except a discriminatory reason for his termination from the Postal Service." Compl. ¶ 18. He seeks summary judgment on the ground that "the complaint is not barred by the doctrines of res judicata and collateral estoppel; plaintiff's race, color and sex discrimination and retaliation claims have merit; and plaintiff's constitutional claims cannot be dismissed merely because Title VII is the exclusive remedy here, as plaintiff alleges constitutional rights and state law violations as well." Pl's Mot. Sum. Judgmt., doc. no. 33, at 5.

For the same reasons as discussed above, Defendant is entitled to judgment as a matter of law and Plaintiff's claims to summary judgment will be denied.

First, to the extent that the Plaintiff is merely seeking to relitigate the propriety of the Postal Service's 1989 determination that Plaintiff filed a false workers' compensation claim and its decision to terminate him as a result, these arguments are barred by the doctrines of res judicata and collateral estoppel. It is readily apparent that the thrust of Plaintiff's present suit is his attempt to relitigate issues previously decided by this Court in *Fullman I*— Plaintiff's contention that he "should never have been fired [from the Postal Service] in 1989." Plf's Second Mot. Sum. Judgmt., doc. no. 34, at 5. In addition, as was advanced in *Fullman I*, Plaintiff again attempts to argue that he has a right to be

reinstated on the Postal Service's employment rolls. As was the case in 2001 when this Court decided *Fullman I*, Plaintiff is not entitled to reinstatement because of the Postal Service's policy refusing employment to persons removed from Postal Service or other federal agencies for cause. Plaintiff claims that he did not file a false claim in 1989 and "he was not legally terminated for 'cause' as alleged by the Postal Service." Opp. to Def.'s Mot. to Dismiss, doc. no. 26, at 6. According to Plaintiff, this entitles him to reinstatement. Again, this is the same issue previously considered and rejected by this Court in *Fullman I*, and the Court will not address it anew.

Second, as discussed above, to the extent that Fullman raises claims of sex, color, and race discrimination, as well as a claim for retaliatory discharge concerning his 2003 termination, he has failed to point to the absence of a genuine issue of material fact to support his claim that he is entitled to judgment.[15]

### D. *Fullman's Miscellaneous Claims*

In Plaintiff's opposition to Defendant's motion for summary judgment, it appears he may be attempting to raise, as he did in *Fullman I*, a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*[16] Plaintiff never raises a claim under the ADA in his complaint and he may not inject a new claim into the summary judgment calculus by using his brief.

Nevertheless, in an abundance of caution and in hopes of resolving this dispute once and for all, the Court will address it. However, the Court is also free to grant summary judgment in favor of the non-movant—Defendant—on this issue, even if not addressed in Defendant's motion for summary judgment. *See, e.g., Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Project Release v. Prevost*, 722 F.2d 960, 969 (2d Cir.1983); *Powell v. Manny*, No. 96–1703, 1997 WL 135900 at *2 (N.D.N.Y. Mar. 13, 1997); *First Investors Corp. v. Liberty Mut. Ins. Co.*, 955 F.Supp. 274, 279 (S.D.N.Y.1997), aff'd, 152 F.3d 162 (2d Cir. 1998); *Buti v. Impressa Perosa, S.R.L.*, 935 F.Supp. 458, 464 n. 1 (S.D.N.Y.1996), aff'd, 139 F.3d 98 (2d Cir.1998), cert. denied, 525 U.S. 826, 119 S.Ct. 73, 142 L.Ed.2d 57 (1998); *William H. McGee & Co. v. M/V MING PLENTY*, 93–5952, 1996 WL 44237, at *5 n. 4 (S.D.N.Y. Feb.5, 1996) ("summary judgment motion 'searches the record' and the Court may grant summary judgment where justified by the evidence of record even in the absence of a cross-motion."); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil 3d § 2720 at pp. 347–52 ("The weight of authority ... is that summary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56.").

"To state a claim for employment discrimination under the ADA, a plaintiff must demonstrate that he or she is a 'qual-

---

**15.** As discussed above, Defendant is entitled to judgment as a matter of law on these claims. *See* section II.B.2–3.

**16.** Plaintiff writes, "Plaintiff base [sic] his complaint mainly on physical disability (light duty status w/ permanent back injury approved by ADA), race, color and sex discrimination and retaliation for aggravating his pre-existing injuries while on light duty status, and constitutional violations, arising out of and leading to his May 29, 2003 termination from the Agency." Plf.'s Opp. (doc. no. 26) at 1. Then, in his second motion for summary judgment, (doc. no. 34), Fullman briefly cites the ADA, with no discussion of how it relates to his case.

ified individual with a disability' within the meaning of the Act, and that he or she has suffered an adverse employment decision as a result of the discrimination." *Tice v. Ctr. Area Trans. Auth.*, 247 F.3d 506, 511 (3d Cir.2001) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir.1999)); *see also Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1003 (3d Cir.1995); *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir.1991).

Again, as stated in *Fullman I*, even assuming that Plaintiff can fulfill the first prong for establishing an ADA claim, he has failed to provide any evidence that he has "suffered an adverse employment decision as a result of ... discrimination." *Tice*, 247 F.3d at 514. Therefore, to the extent that Plaintiff alleges violations of the ADA, no genuine issue of material fact exists and summary judgment will be granted in favor of Defendant.

Finally, in one of his motions for summary judgment, Plaintiff states that he should be allowed to amend his complaint to include a claim for defamation.[17] The government has not waived its sovereign immunity with respect to claims of defamation, and such a claim is excluded from conduct actionable under the Federal Tort Claims Act. *See* 28 U.S.C. § 2680(h); *Brumfield v. Sanders*, 232 F.3d 376, 382 (3d Cir.2000). As such, it would be futile for Plaintiff to amend the complaint to include a defamation claim. Therefore, to the extent that Plaintiff requests leave to amend his complaint to include a defamation claim, such request is denied as futile. Fed.R.Civ.P. 15(a); *see also F.D.I.C. v. Bathgate*, 27 F.3d 850, 874 (3d Cir.1994)

(discussing district court's decision to deny motion to amend based on futility of proposed amendment).

## III.  CONCLUSION

For the above reasons, the Court will grant Defendant's motion for summary judgment in its entirety and deny Plaintiff's motion(s) for summary judgment in its entirety. All of Plaintiff's claims against Defendant have been adjudicated by this Memorandum in favor of Defendant and against Plaintiff. An appropriate judgment shall be entered and the matter marked closed.

An appropriate Order follows.

## *ORDER*

**AND NOW**, this 28th day of **March, 2007**, after consideration of each parties' motions, it is **hereby ORDERED** that:

1. Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (doc. no. 9) is **GRANTED;**

2. Plaintiff's Motion for Appointment of Counsel (doc. nos.10, 28) is **DENIED;**

3. Plaintiff's Motions for Summary Judgment (doc. nos.33, 34, 35) are **DENIED;**

4. Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss (doc. no. 26), and Plaintiff's Response Motion to Defendant's Memorandum of Law (doc. no. 38) are **DENIED** as moot[18];

---

**17.** Plaintiff writes "Therefore, the Court should grant plaintiff permission to amend his complaint to add his constitutional rights violations and a charge of defamation of character."

**18.** Plaintiff incorrectly labels his response briefs as "motions." The Court considered Plaintiff's responses, however, because the Defendant's motions to which Plaintiff responded was granted, the Court will deny as moot this mislabeled response.

5. Plaintiff's request for an extension of time (doc. no. 39) is **DENIED** as moot [19];

6. Plaintiff's request for assistance (doc. no. 43) is **DENIED**[20];

7. Plaintiff's request for a subpoena and/or order for his medical records (doc. no. 45) is **DENIED**[21].

**AND IT IS SO ORDERED.**

19. Plaintiff requested additional time; however, there were no deadlines facing Plaintiff that were able to be extended.

20. Plaintiff's "Request For Assistance" is actually a motion for appointment of counsel. In addition, he seeks help in securing a medical expert. As previously mentioned, the Plaintiff's claims are without merit and there is no need to grant his requests.

21. Plaintiff asks the Court to issue a subpoena for his medical records from SCI–Smithfield. He argues that he was informed that he will have to pay for a copy of these records and he should not have to "because of his current financial situation." Plaintiff's medical condition is not at issue or relevant to the issues in this case. For this reason, any medical records would be unhelpful to Plaintiff's case and the request is denied.